2006-NMCA-113

142 P.3d 978

STATE of New Mexico, ex. rel. CHIL-
DREN, YOUTH AND FAMILIES DE-
PARTMENT, Petitioner–Appellee,

v.

ATHENA H., Respondent–Appellant.

In the Matter of Charles H., Candice
H., and Tholie H., Children.

No. 25,979.

Court of Appeals of New Mexico.

Aug. 3, 2006.

Children, Youth & Families Department, Angela L. Adams, Chief Children's Court Attorney, Rebecca J. Liggett, Children's Court Attorney, Santa Fe, NM, for Appellee.

Debra Poulin, Santa Fe, NM, for Appellant.

## OPINION

WECHSLER, Judge.

{1} Athena H., Mother, appeals from the district court's judgment terminating her parental rights to three of her children, Candice, Charles, and Tholie. She contends that the district court erred in finding that the causes and conditions of abuse and neglect had not been remedied and in finding that the Children, Youth & Families Department (CYFD) made reasonable efforts to assist her in adjusting the causes and conditions that rendered her unable to properly care for the children. She further contends that she was denied effective assistance of counsel. We conclude that, notwithstanding Mother's compliance with the treatment plan prescribed for her to the best of her ability, the district court did not err in terminating Mother's parental rights upon its finding that Mother was not capable of parenting her children within the foreseeable future. We therefore hold that the district court did not commit error and also hold that Mother has not demonstrated ineffective assistance of counsel. We affirm.

## BACKGROUND

{2} The following facts, found by the district court in its findings of fact and conclusions of law, are not in dispute. Mother has four children, the oldest of whom, John, is not subject to this appeal. The parental rights of Mother's first and second husbands have been terminated. Mother is remarried. Since 1993, Mother and all the children received services from Colorado Social Services and CYFD. In 1993, Mother learned that John, then age 3, was engaged in inappropriate sexual activity. In 1995, mother learned that John, then age 5, and Charles, then age 3, were involved in inappropriate sexual activity with each other. Mother acted sexually inappropriately with her children and did not react properly to the sexual abuse of her children (by her second husband) and the inappropriate sexual activity among her children that occurred while the children were in her care. All the children were in foster care in Colorado from 1994 to 1996 because of the sexual activity of the children, Mother's mental health, lack of supervision, and physical and emotional abuse. By the time CYFD assumed custody of the children, on July 11, 2000, the children had "chronic and severe sexual involvement" with each other, with Mother's knowledge.

{3} The children's therapists continually recommended that contact with Mother was not in the children's best interest. The children's therapists testified that the termination of Mother's parental rights was in the children's best interest. Candice was diagnosed as suffering from reactive attachment disorder-disinhibited, major depression with psychotic features, post-traumatic stress disorder, communication disorder, physical symptoms of anal and vaginal penetration, physical abuse, sexual abuse, neglect, a chaotic family environment, and attachment trauma. In addition, Candice had been removed from Mother's care on several occasions. Charles was diagnosed as suffering from reactive attachment disorder-disinhibited, depression, communication disorder, attachment trauma, physical abuse, and neglect, as well as being a sexual abuser and coming from a chaotic family environment. Charles was also removed from Mother's care on several occasions. Tholie was diagnosed as suffering from reactive attachment disorder-disinhibited, post-traumatic stress disorder, cavities, lack of toilet training, and a severe history of neglect, physical abuse, and sexual abuse.

{4} In the course of the proceedings, the district court ordered a treatment plan for Mother to enable her to change the condi-

tions and causes of her neglect of her children. The treatment plan included Mother's obtaining a GED; submitting to a polygraph examination; participating in anger management counseling, relationship counseling, and mental health treatment; and completing parenting classes. The district court found that although Mother did not participate in anger management counseling or participate in mental health treatment or take medication for two years, she complied with the treatment plan to the best of her ability.

{5} Notwithstanding its finding that Mother had complied with the treatment plan to the best of her ability, the district court found that "due to her psychological infirmities and the fact [that] her children have been severely psychologically and emotionally damaged while in her care, [Mother] cannot safely parent her children and meet her children's emotional and psychological needs in the foreseeable future." It found that CYFD made reasonable efforts to assist Mother "in adjusting to the conditions which have led to her neglect of the children." It further found that the children were "so emotionally and permanently damaged by the abuse and neglect inflicted on them by [Mother] and [her second husband], that further efforts by [CYFD] to assist [Mother] in educating herself as to her children's mental condition, the causes of those conditions and her role in the children's conditions[, her] own psychological makeup and parenting skills, and other conditions that rendered her unable to properly parent her children, were not going to make a difference."

## ACTIONS OF MOTHER AND REASONABLE EFFORTS OF CYFD TO REMEDY CAUSES AND CONDITIONS OF ABUSE AND NEGLECT

{6} Mother argues that termination was improper because CYFD did not meet its burden to prove by clear and convincing evidence that (1) the causes and conditions of the abuse and neglect had not been remedied, and (2) it made reasonable efforts to assist Mother in remedying such causes and conditions. We address Mother's arguments by determining if substantial evidence of a clear and convincing nature exists to support the termination, giving evidentiary deference to the district court's findings. *State ex rel. Children, Youth & Families Dep't v. Patricia H.*, 2002–NMCA–061, ¶ 22, 132 N.M. 299, 47 P.3d 859.

{7} The Abuse and Neglect Act states CYFD's burden, as relevant to this case, in NMSA 1978, § 32A–4–28(B)(2)(a), (b) (2005), which provides:

B. The court shall terminate parental rights with respect to a child when:

. . . .

(2) the child has been a neglected or abused child as defined in the Abuse and Neglect Act . . . and the court finds that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by the department or other appropriate agency to assist the parent in adjusting the conditions that render the parent unable to properly care for the child. The court may find in some cases that efforts by the department or another agency are unnecessary, when:

(a) there is a clear showing that the efforts would be futile; or

(b) the parent has subjected the child to aggravated circumstances. . . .

{8} Mother does not contest that her children were abused and neglected as required by the Act. As to the continuation of the causes and conditions of the abuse and neglect, Mother contends that, at the time of the termination hearing in 2004, she "had made significant changes [such that] she was able to provide adequate care and support for her children." According to Mother, her testimony about her mental health needs was the only current testimony, and it indicated that she had addressed her mental health needs through therapy and that she was managing her mental health needs effectively without medication. Mother stresses that she complied with the court's treatment plan, and indeed, the district court found that Mother complied with the treatment plan to the best of her ability and had met many of its requirements.

{9} We first address Mother's contention concerning her compliance with the treatment plan. We address this contention

de novo because it raises an issue of statutory interpretation. *See, e.g., State ex rel. Children, Youth & Families Dep't v. Paul P.,* 1999–NMCA–077, ¶ 7, 127 N.M. 492, 983 P.2d 1011. In a termination of parental rights case, the district court must determine if the causes and conditions of a child's neglect and abuse are likely to change in the foreseeable future. Section 32A–4–28(B)(2). CYFD must provide reasonable efforts to assist the parent to change the conditions that gave rise to the neglect and abuse, and the district court must consider the results of CYFD's efforts. *Id.* The court must approve a treatment plan in an abuse and neglect case in order to provide the framework for the efforts of CYFD and the parent. *State ex rel. Children, Youth & Families Dep't v. Maria C.,* 2004–NMCA–083, ¶ 18, 136 N.M. 53, 94 P.3d 796. However, compliance with the terms of a treatment plan is not dispositive of the issue of parental termination. Even with a parent's reasonable efforts, as the district court found in this case, the parent may not be able to make the changes necessary to rectify the causes and conditions of the neglect and abuse so as to enable the court to conclude that the parent is able to properly care for the child. *See* § 32A–4–28(B)(2); *see, e.g., In re Dustin R.,* 54 Cal.App.4th 1131, 63 Cal.Rptr.2d 269, 276–77 (Ct.App. 1997) (affirming an order terminating family reunification services because, although the mother had substantially completed the reunification plan, the goals of the plan had not been achieved); *In re C.A.K.,* 652 P.2d 603, 610–11 (Colo.1982) (en banc) (reinstating the termination of a mother's parental rights because, although she had "reasonably complied" with the treatment plan, the plan did not succeed in rendering her fit to parent her child as statutorily required); *In re C.H.,* 2003 MT 308, ¶¶ 27–29, 318 Mont. 208, 79 P.3d 822 (affirming termination of a mother's parental rights despite the fact that she "attempted to comply with the treatment plan" because the treatment plan was nonetheless not successful as required by statute). The Abuse and Neglect Act requires the treatment plan to be reasonable, not a guarantee of family reunification. Even with compliance, it may not achieve its goal. Such was the district court's analysis in this case. Although it found that Mother had given her best effort to comply with the treatment plan, it nevertheless found that because of Mother's "psychological infirmities" and because of the severe psychological trauma and emotional damage that the children suffered while in Mother's care, Mother could not safely parent her children and meet their psychological and emotional needs in the foreseeable future.

{10} We turn then to the evidence supporting this finding. Mother provided extensive testimony at the termination hearing. She did not contest the children's sexual activity, their continued trauma, or their long history of involvement and foster care with both Colorado Social Services and CYFD. Mother testified that she too had a history of sexual and physical abuse. Josephine Olsen, a therapist who evaluated the three children subject to this appeal, testified that Mother was emotionally depressed and not emotionally available for her children. According to Ms. Olsen, Mother would not be able to parent her children until she resolved her own abuse issues. Dr. Christopher J. Alexander, a child psychologist, who was the court-appointed expert in the case, testified that Mother had a history of attention deficit hyperactivity disorder, bipolar disorder, and borderline and antisocial personality disorder and that Mother relies heavily on dissociation. He stated that personality disorders are pervasive, long-standing, and resistant to change and that changes to Mother's personality style would be gradual and not spontaneous. He believed that Mother's conditions required treatment. Although Mother had been obtaining mental health treatment from Dr. Ed Fields in accordance with the treatment plan, she had stopped the treatment two years prior to the termination hearing because she moved to Denver and did not believe that she needed continued care. Dr. Fields did not release his records of Mother's treatment. From this evidence, the district court could reasonably conclude, by the standard of clear and convincing evidence, that Mother did not properly address her own problems in order to make the changes necessary to develop proper parenting behavior.

{11} Significantly, Mother's actions also supported this conclusion. After Mother had stopped her treatment and moved to Denver, even though Mother was permitted visitation with John, she did not exercise it for the entire two years that she had been living in Denver. For significant periods, Mother did not contact John because she did not approve of the music that he enjoyed. In her testimony, she did not contest that she sent Candice back to Colorado to the custody of her second husband knowing that he had abused Candice and, although admitting that it was wrong, sought to justify her behavior on the basis that she needed evidence of the abuse before she could take action to protect her child. Mother testified that, when Candice was five years old, Mother sent Candice to live with a person Mother considered to be extremely abusive because she felt that person would be able to assist Candice with her reading skills. Mother also sought to justify additional evidence of her inappropriate behavior, such as dressing Candice in a bra at age six and discussing Mother's sexual history with the children.

{12} We do not agree with Mother that her testimony concerning her mental needs was the only relevant evidence of her present condition or that Mother's testimony supports reversal. As we have noted, Dr. Alexander testified about the longstanding nature of personality disorders. Ms. Olsen testified that Mother needed to address her own past abuse before she could successfully parent her children. Mother testified that she felt she continued to suffer from multiple personality disorder and other mental illnesses but that she did not want to pursue treatment. Mother discontinued her therapy in 2002. The district court was entitled to conclude from this evidence, as well as from the overwhelming evidence of the chronic abuse and trauma to the children and from Mother's testimony at the termination hearing concerning her reactions to the abuse and her relationship with her children, that Mother, who was no longer in therapy, continued to be sufficiently unstable and had not made the changes necessary to be able to properly parent her children in the foreseeable future.

{13} Mother's argument that the district court erred in finding that CYFD made reasonable efforts to adjust the causes and conditions that led to her neglect of the children addresses efforts of reunification. Mother contends that CYFD did not present evidence that it offered or provided her with a treatment plan or services, other than anger management counseling, necessary for reunification with the children. However, the treatment plan approved by the district court also involved Mother's attending relationship counseling, obtaining mental health treatment, attending parenting classes, and receiving a GED. Mother's social worker testified, and Mother does not contest, that CYFD made proper referrals, facilitated Mother's visits, and made diligent efforts to obtain information from Dr. Fields. Mother contends that CYFD undercut her ability to participate in the children's treatment and, thereby, her chance of reunification, by stopping her visits from November 2001 until the termination hearing. Mother does not contest, however, that her visits with the children, except John, were stopped on the recommendation of the children's therapists because they believed that Mother's visits had a detrimental effect on the children, who became traumatized, regressed in behavior, and were not able to progress in therapy. CYFD was entitled to act in the children's best interest. *See* NMSA 1978, § 32A–1–3(A) (1999) ("The child's health and safety shall be the paramount concern. Permanent separation of the child from the family, however, would especially be considered when the child or another child of the parent has suffered permanent or severe injury or repeated abuse."). There was substantial evidence supporting the district court's finding that CYFD made reasonable efforts to adjust the causes and conditions of neglect and abuse.

## INEFFECTIVE ASSISTANCE OF COUNSEL

{14} Mother additionally argues that she was denied effective assistance of counsel. To support this claim, Mother alleges facts that are not part of the record on appeal. She states that she did not know that she needed to make a record of ineffec-

tive assistance on her own behalf. Nevertheless, matters not of record present no issue for appeal. *See In re Candice Y.*, 2000–NMCA–035, ¶ 21, 128 N.M. 813, 999 P.2d 1045 (refusing to consider the argument that a judge should have recused himself because no evidence supporting recusal was on the record).

## CONCLUSION

{15} We affirm the judgment of the district court terminating Mother's parental rights to Candice, Charles, and Tholie.

{16} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and RODERICK T. KENNEDY, Judges.