**Certiorari Granted, September 19, 2016, No. S-1-SC-36028**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2017-NMCA-004**

**Filing Date:  July 7, 2016**

**Docket No. 34,908**

**STATE OF NEW MEXICO ex rel.**
**CHILDREN, YOUTH AND FAMILIES**
**DEPARTMENT,**

      **Petitioner-Appellee,**

**v.**

**KEON H.,**

      **Respondent-Appellant,**

**and**

**HALLEY R.,**

      **Respondent,**

**IN THE MATTER OF ANHAYLA H.,**

      **Child.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**William E. Parnall, District Judge**

Children, Youth & Families Department
Charles E. Neelley, Chief Children's Court Attorney
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Law Office of Jane B. Yohalem
Jane B. Yohalem

1

Santa Fe, NM

for Appellant

W. Karen Cantrell
Placitas, NM

Guardian ad litem

**OPINION**

**KENNEDY, Judge.**

**{1}**     The district court, upon the Children, Youth, and Families Department's (CYFD) motion, terminated Father's parental rights with regard to Child. Father was incarcerated for the majority of time between February 2013, when CYFD took custody of Child, and February 2015, when Father's parental rights were terminated. Father appeals the termination of his parental rights, asserting that neither CYFD nor the district court followed the procedures required for termination of parental rights under the Abuse and Neglect Act, NMSA 1978, §§ 32A-4-1 to -34 (1993, as amended through 2016). Specifically, Father asserts that CYFD never satisfied its duty to create a treatment plan and put forth reasonable efforts to assist him with reunification as required by Section 32A-4-28(B)(2). CYFD argues that it satisfied the requirement that it make reasonable efforts to assist Father. We are being asked to determine whether the evidence proffered is sufficient to constitute clear and convincing evidence that CYFD put forth "reasonable efforts" under the Abuse and Neglect Act. We conclude that it is not and reverse.

**I.     PROCEDURAL HISTORY**

**{2}**     CYFD filed a petition against Keon H. (Father) and Halley R. (Mother), alleging Anhayla H. (Child) was an abused child and a neglected child[1] under Section 32A-4-2(B) and (E).[2] *See* § 32A-4-15. CYFD took custody of Child, and the district court issued an ex parte custody order awarding CYFD custody. *See* § 32A-4-16(A). Father entered a plea of no contest to the allegations that Child was abused. On May 20, 2013, the district court accepted that plea and adopted CYFD's proposed treatment plan for Father. *See* § 32A-4-21. The treatment plan required only one thing of Father—that he participate in a psychosocial assessment.

---

[1]We do not question whether Child was an abused and neglected child.

[2]Mother's parental rights were eventually terminated, and she did not appeal that termination. As such, we are concerned only with Father's portion of the proceedings.

2

**{3}** The district court held a permanency hearing in November 2013, during which CYFD recommended a permanency plan of adoption based on the failure of both parents to put forth effort in completing their treatment plans. *See* § 32A-4-25.1. As a result of CYFD's report regarding the lack of efforts of both parents, the district court set a permanency planning goal of adoption. The district court held another permanency hearing in February 2014. CYFD reported that Father had made no progress with his treatment plan. One month later, CYFD filed a motion to terminate Father's parental rights. *See* § 32A-4-28.

**{4}** During the termination of parental rights (TPR) hearing, CYFD presented testimony regarding the severity of Child's physical and mental impairment and testimony from Richard Gaczewski, Father's permanency planning worker (PPW) from March 2014 to November 2014. Father also testified at the TPR hearing. After Father's testimony, CYFD stated that it intended to call a rebuttal witness, and the district court recessed the proceedings. The TPR hearing was in recess for approximately six months. During that time, CYFD provided Father with a written psychosocial assessment, which Father returned within the month. Accordingly, Gaczewski created a new treatment plan containing additional requirements, such as participation in Child's medical appointments, participation in a psychological assessment, participating in a substance abuse assessment, maintaining a safe home environment, and maintaining contact with his PPW at least once per month.[3] At the second TPR hearing in February 2015, CYFD again presented testimony from Gaczewski, and also presented testimony from Lareina Manuelito, who was Father's PPW after Gaczewski. Both PPWs explained CYFD's interactions with Father since the last hearing, acknowledging Father's prompt return of the psychosocial assessment.

**{5}** In making its ruling on CYFD's TPR motion, the district court expressed disdain for CYFD's handling of the case. The district court expressed the view that CYFD ought to do more for incarcerated individuals than it did in this case. The district court stated that it was "not happy" with the manner in which CYFD dealt with Father's case and cautioned CYFD that it ought not to deal with other cases in the same way. The district court ultimately held that CYFD had put forth the reasonable effort required by the Abuse and Neglect Act, but stated that it was drawing that conclusion only because, under the circumstances of the case, little more could have been done to change Father's circumstances. The district court found, by clear and convincing evidence, that the causes and conditions of the abuse had not been alleviated and were unlikely to be alleviated in the near future. As such, the district court granted CYFD's motion for to terminate Father's parental rights. Father filed a notice of

---

[3]Despite Gaczewski stating in that letter that he intended to propose that the court adopt the plan at the next court hearing, scheduled for September 29, 2014, that hearing was vacated, and it does not appear that Father's revised treatment plan was ever adopted by the court prior to the second TPR hearing. *See State ex rel. Children, Youth & Families Dep't v. Athena H.*, 2006-NMCA-113, ¶ 9, 140 N.M. 390, 142 P.3d 978 ("*The court must approve a treatment plan in an abuse and neglect case* in order to provide the framework for the efforts of CYFD and the parent." (emphasis added)).

appeal.

## II. DISCUSSION

**{6}** The standard of proof in a TPR proceeding is clear and convincing evidence. Section 32A-4-29(I). The issue on appeal in this case is whether CYFD provided sufficient evidence under the clear and convincing standard establishing that it made reasonable efforts to assist Father. *See State ex rel. Children, Youth & Families Dep't v. Benjamin O.*, 2009-NMCA-039, ¶¶ 13-14, 146 N.M. 60, 206 P.3d 171 (concluding that the father's challenge to the court's finding regarding abandonment required sufficiency review on appeal). We uphold the district court's judgment if, viewing the evidence in the light most favorable to the judgment, a fact finder could properly conclude that the clear and convincing standard was met. *See State ex rel. Children, Youth & Families Dep't v. Hector C.*, 2008-NMCA-079, ¶ 11, 144 N.M. 222, 185 P.3d 1072. Clear and convincing evidence is such that "instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Children, Youth & Families Dep't v. Lance K.*, 2009-NMCA-054, ¶ 16, 146 N.M. 286, 209 P.3d 778 (alteration, internal quotation marks, and citation omitted).

**{7}** In order to terminate parental rights based on abuse or neglect, the district court must "make three separate findings: (1) [Child was] neglected or abused; (2) the conditions and causes of neglect and abuse were unlikely to change in the foreseeable future; and (3) CYFD made reasonable efforts to assist Father in adjusting the conditions that rendered Father unable to properly care for [Child]." *State ex rel. Children, Youth & Families Dep't v. Nathan H.*, 2016-NMCA-043, ¶ 32, 370 P.3d 782, *cert. denied*, 2016-NMCERT-___ (No. 35,712, May 3, 2016); *see* § 32A-4-28(B)(2). On appeal, Father challenges the district court's conclusion that CYFD made reasonable efforts. Father also asserts that he should have been given more time to work his treatment plan prior to the termination of his parental rights. As support, Father asserts that if he had been informed of the available services and urged to stay in contact with CYFD, "he likely would have made contact the times he was released[.]"

**{8}** In this case, it is apparent the district court had grave reservations about the reasonableness of CYFD's efforts, but resolved the question with the observation that, at the end of the process, greater effort would not have made any difference. "What constitutes reasonable efforts may vary with a number of factors, such as the level of cooperation demonstrated by the parent and the recalcitrance of the problems that render the parent unable to provide adequate parenting." *State ex rel. Children, Youth & Families Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 23, 132 N.M. 299, 47 P.3d 859; *see id.* ¶ 24 (acknowledging that reasonable efforts are not defined by any particular length of time). Though our courts have not yet tackled the issue of what constitutes "reasonable efforts" when a parent is incarcerated, case law is quite clear that a parent's incarceration does not remove or even diminish CYFD's obligation to put forth reasonable efforts. In *State ex rel. Children, Youth & Families Dep't v. William M.*, CYFD initiated abuse and neglect

4

proceedings against the father while he was incarcerated, and those proceedings eventually led to the termination of the father's parental rights. 2007-NMCA-055, ¶¶ 3-5, 141 N.M. 765, 161 P.3d 262. In concluding that substantial evidence supported a finding of reasonable efforts, we noted that prior to filing a motion to terminate the father's parental rights, CYFD had maintained contact with the father both directly and through counsel, informed the father of the children's problems and treatment, visited the father during his incarceration, and provided the father with an interpreter to assist him with the psychosocial evaluation that it gave him. *Id.* ¶ 69. CYFD interacted with the father both in person at the prison as well as over the phone. *Id.* Even when the father was on parole in a different state, CYFD attempted to maintain contact with the father by telephone. *Id.* ¶ 71. Using these facts, we concluded that CYFD had made reasonable efforts to assist the father and affirmed the termination, reasoning that the father's incarceration and unwillingness to work with CYFD made reunification impossible. *Id.*

**{9}** Similar to *William M.*, in *Hector C.*, CYFD initiated termination proceedings prior to the father's release from jail, and the father was unable to participate in any treatment while he was incarcerated. 2008-NMCA-079, ¶ 25. During the father's incarceration, CYFD attempted to arrange visits between the children and the father and provided the father with a psychological examination. *Id.* ¶ 26. After the father's release, CYFD provided the father with parenting classes, family counseling, substance abuse counseling, and visits with the children. *Id.* Concluding that CYFD had made reasonable efforts to assist the father, we reasoned that the father's inability to work the treatment plan while incarcerated ultimately prevented reunification. *Id.* ¶ 27.

**{10}** This case presents a much more sparse picture of CYFD's involvement. Here CYFD points to Father's failure to complete a psychosocial assessment until September 2014, and his "unavailability" in particular, as noncompliance with the treatment plan.[4] It is important to mention here that, although it is clear that Father was in and out of Metropolitan Detention Center (MDC) for much of the time that Child was in CYFD custody, it remains unclear from the record and briefs precisely when and how long Father was incarcerated. It is equally unclear when and how many times CYFD attempted to contact or locate Father. The record does, however, reflect that CYFD's actions were incomplete as to both implementing an appropriate treatment plan for Father and in facilitating interaction with him during his incarceration and when he was released from incarceration.

**{11}** Precedent that supports the reasonableness of CYFD's efforts to assist an incarcerated parent typically entails persistent efforts to communicate with the parent, provision of opportunities for the parent to interact with the children, suggestion of alternate

---

[4]This reference to Father's unavailability could easily be construed as a thinly veiled reference to his incarceration. We remind CYFD that they are prohibited by statute from terminating parental rights based solely on the fact that the parent is incarcerated. Section 32A-4-28(D).

placement opportunities for the children, and identification of available services designed to assist the parent, coupled with an absence of effort on the part of the parent to do things necessary to achieve reunification. *See Hector C.*, 2008-NMCA-079, ¶¶ 24-27; *William M.*, 2008-NMCA055, ¶¶ 68-71. Because CYFD did not provide him the services and opportunities that were available in the cases discussed above, this case presents a situation in which it is difficult to gauge Father's involvement and willingness to put forth effort. We will not speculate how Father might have completed the treatment plan under different circumstances.

**{12}**    The district court implemented Father's initial treatment plan suggested by CYFD, stating the sole requirement that he complete a psychosocial assessment. At the adjudicatory hearing in April 2013, the treatment plan was amended to include additional requirements over a year later, and six months after CYFD had moved to terminate Father's parental rights. But Father's treatment plan never developed past the single requirement of a psychosocial assessment because the assessment was a prerequisite to any further action under the treatment plan. This is an abdication of CYFD's duties; if no follow up is provided, reasonable efforts have not been made. *See, e.g.*, *Hector C.*, 2008-NMCA-079, ¶ 27; *William M.*, 2007-NMCA-055, ¶ 69. Although Father had a treatment plan in place for almost two years, completing a psychosocial assessment was the sole item listed under the treatment plan for the majority of that time period. And with this lone requirement, Father complied when provided the assessment material by CYFD.

**{13}**    At the TPR hearing, CYFD presented evidence regarding the number of times it attempted to contact Father, any difficulties it had in contacting father, or the manner in which it attempted to contact Father prior to filing a TPR motion. When the treatment plan, such that it was, was implemented in April 2013, CYFD reported that Father had not returned his PPW's calls and did not attend a scheduled office visit. CYFD's report to the district court at a subsequent hearing in May 2013 stated simply that Father had not been in touch with CYFD. At a permanency hearing held in November 2013, CYFD's report was contradictory, in that it claimed to have arranged for office visits with Father, but that Father had not been in touch with CYFD. It also noted that Father had one visit with his daughter and that Father's PPW visited him at MDC that month, but Father had not participated in his treatment plan. CYFD reported to the district court at the next permanency hearing in February 2014 that Father had been scheduled for a psychosocial assessment but had cancelled two appointments.[5] Otherwise, CYFD reiterated the same information that it provided previously regarding Father's visit with his daughter and the PPW's visit.

---

[5]It is unclear whether these cancellations were the result of Father's incarceration. It is unclear whether these cancellations were the result of Father's incarceration. But considered alongside the fact that Father had provided information to CYFD regarding the assessment, evidence of cancelled appointments alone cannot support the conclusion that Father had not participated in what his treatment plan required.

**{14}**     In March 2014, the same month that the motion for TPR was filed, Gaczewski was assigned as Father's new PPW. Gaczewski was the only CYFD witness to testify regarding any pre-termination contact with Father. While he was Father's PPW, Gaczewski's efforts to locate Father were limited to asking Mother if she knew of Father's whereabouts or if she had any recent involvement with him[6] and checking the MDC website to see whether Father was being held there. Gaczewski checked the MDC website in July 2014 and in April or May 2014; Father's name did not appear in the website's database.[7] Gaczewski never set up an appointment in order to conduct the psychosocial assessment. Prior to the first TPR hearing, Gaczewski did not send Father any letter containing information regarding the process, Child's development, or what was required of him, nor did he send Father any self-addressed stamped envelopes or call Father. Father testified at the TPR hearing, confirming that prior to the first TPR hearing, he had not received any information from CYFD regarding a psychosocial assessment.

**{15}**     On September 2, 2014, *after* the first TPR hearing, Gaczewski wrote a letter to Father that introduced himself to Father, gave an update on Child, included self-addressed stamped envelopes, and attached a written psychosocial assessment for Father to complete. As noted, Father returned the assessment within the month, along with a letter that he had written to Child.[8] Gaczewski wrote back to Father in a letter dated September 23, 2014, and set forth a new proposed treatment plan and included suggestions on how Father could best accomplish its requirements while incarcerated. The new, unadopted treatment plan suggested that during Father's incarceration, Father send letters and photographs for Child, inform Gaczewski of any relatives who could serve as possible placements for Child, inform Gaczewski if any classes were available in MDC, and make a plan that Father intended to follow once released. The rest of the requirements could not be completed while Father was incarcerated. Gaczewski sent a similar letter in October 2014. Two months after the first TPR hearing, Gaczewski wrote to inform Father that he would no longer be Father's permanency planning worker and provided the name and contact information of Father's new PPW within CYFD, Lareina Manuelito. Manuelito received letters that Father wrote to Child in December 2014 and January 2015. Manuelito wrote to Father shortly before the second TPR hearing, including self-addressed stamped envelopes and a description of Child's progress in that letter.

---

[6]We note that prior to this, Mother had been admonished for her continued contact with Father, and warned by both the district court and CYFD that continued interaction with Father would likely be harmful to the chances of her getting custody of Child.

[7]Though the PPW stated that he believed he checked the website twice between March 2014 and August 2014, he could not pinpoint any month other than July during which the second check took place.

[8]There is also evidence that Father wrote multiple letters to Child after the first TPR hearing and before Manuelito became Father's PPW.

**{16}** Through these facts, the record reveals a pattern of unsustainable nonchalance from both CYFD and possibly Father as well, until after the first TPR hearing in August 2014. As late as November 2013, CYFD knew Defendant was incarcerated. There is, however, nothing in the record indicating that CYFD ever reached out to Father between November 2013 and March 2014 to provide him with the required psychosocial assessment. Even though Father's PPW visited him at MDC in November 2013, the PPW made no attempt to give Father a psychosocial assessment at that time. In fact, it is only after the TPR hearing in August 2014 that CYFD began initiating monthly contact with Father.

**{17}** The completion of a psychosocial assessment—the sole item in Father's treatment plan for more than a year prior to CYFD's motion for TPR—was in no way hindered by Father's incarceration. The administering of that assessment was not contingent on Father's physical presence at a meeting with his PPW or with CYFD, as evidenced by the fact that CYFD sent the assessment to Father in a letter immediately following the first TPR hearing and Father timely returned it complete with all necessary answers. We find it troubling that, although CYFD used Father's failure to undergo a psychosocial assessment to terminate his parental rights, the record reveals virtually no evidence that CYFD timely put forth effort to assist Father in getting that psychosocial assessment. *See State ex rel. Children, Youth & Families Dep't v. Benjamin O.*, 2007-NMCA-070, ¶ 48, 141 N.M. 692, 160 P.3d 601 (expressing similar concerns regarding efforts to assist a father with housing and employment issues).

**{18}** We are aware of and acknowledge Father's failings throughout this process, as well as the gravity of the abuse suffered by Child. Father neglected to contact CYFD, missed a scheduled visitation with Child, and cancelled appointments with CYFD. A parent is obligated to work with CYFD in completing the treatment plan, but CYFD is obligated to make reasonable efforts in the first instance. *See* Section 32A-4-22(C). While Father's repeated incarcerations doubtlessly hindered his ability to work with CYFD, they did not relieve him of his obligation to follow the treatment plan and work with CYFD. *See Nathan H.*, 2016-NMCA-043, ¶ 41 (stating that "[a]lthough [the f]ather's repeated incarceration hindered the treatment plan, incarceration does not release [the f]ather from following treatment that affects his parental duties to [his c]hildren"). But here, the one item on Father's treatment plan as adopted by the court was not properly pursued by CYFD, and the amended treatment plan was never formalized and actually arose following the initiation of TPR proceedings by CYFD. The record clearly reveals that CYFD failed to put forth reasonable efforts to assist Father, but "we are cognizant of the fact that Child is not a trophy to be awarded to whichever party prevails in court[.]" *Benjamin O.*, 2007-NMCA-070, ¶ 38 (noting that evidence did not support the conclusion that CYFD complied with the court's orders). Despite CYFD's failure to proffer sufficient evidence of reasonable efforts, we note that CYFD is not foreclosed from pursuing termination of Father's parental rights on remand: "If, as it appears in the case at bar, CYFD does not believe that reunification is possible and that termination of parental rights is in Child's best interests, it can bring new or current allegations of abuse, neglect, or abandonment to the district court's attention." *Id.* ¶ 39.

### III.    CONCLUSION

{19}    Although Father's behavior throughout these proceedings has been neither exemplary nor commendable, neither has CYFD presented any real effort to assist Father in any way that could be construed as "reasonable," or that would support CYFD's burden of proof that it complied with its statutory duty to make reasonable efforts on Father's behalf. CYFD presented virtually no evidence of any efforts to assist Father prior to November 2013. CYFD presented evidence of one visit to MDC in November 2013, but presented no evidence regarding what that visit entailed or why a psychosocial assessment was not conducted at that point. CYFD made no contact with Father between November 2013, when it knew Father was incarcerated, and March 2014, when it filed the TPR motion. The extent of CYFD's efforts to contact Father between the filing of the TPR motion and the TPR hearing was limited to inquiries to Mother and two website searches. The majority of CYFD's efforts have occurred since the first TPR hearing, but were both tardy and incomplete from the standpoint of this appeal. We conclude that such evidence cannot be sufficient to constitute reasonable efforts. Because the sole issue on appeal is the sufficiency of evidence to support the district court's conclusion that CYFD put forth reasonable efforts, and not whether Father's actions were adequate to permit reunification, we reverse.

{20}    **IT IS SO ORDERED.**

_____

**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Judge**

_____

**J. MILES HANISEE, Judge**